## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **MICHELLE TISDALE,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DELTA AIR LINES INC.;** | § | **CIVIL ACTION NO. 3:18-CV-03231** |
| **DELTA CARGO;** | § | |
| **GLOBAL MORTUARY AFFAIRS,** | § | |
| **LLC; REESE FUNERAL HOME, INC.** | § | |
| **EAGLE'S WINGS AIR, LLC &** | § | |
| **INMAN SHIPPING WORLDWIDE,** | § | |
| **LLC,** | § | |
| **Defendants.** | § | |

## DEFENDANT DELTA AIR LINES, INC.'S, MOTION FOR RECONSIDERATION BASED ON NEWLY DISCOVERED EVIDENCE, AND BRIEF IN SUPPORT THEREOF

Respectfully submitted by,

**VAUGHAN & RAMSEY**
Daena G. Ramsey
Texas Bar No. 08093970
dramsey@vrlaw.net
2000 East Lamar Blvd., Suite 430
Arlington, Texas  76006
(972) 262-0800 - *telephone*
(888) 711-6044 - *Toll Free*
(972) 642-0073 – *facsimile*

**MOUND COTTON WOLLAN & GREENGRASS LLP**
Francis A. Montbach
Olga Sekulic
One New York Plaza
New York, NY  10004
212-804-4229
212-344-8066 – Fax
fmontbach@moundcotton.com
osekulic@moundcotton.com

**COUNSEL FOR DELTA AIR LINES, INC.**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES…………….…**…………………………………….…….**ii

**I.  STATEMENT OF ISSUES DECIDED BY COURT**……………………………………1

**II.  STATEMENT OF UNDISPUTED MATERIAL FACTS**………………………………...1

**III. EVIDENCE IN SUPPORT OF THE MOTION**…………………………………………..5

**IV.  ARGUMENT AND AUTHORITIES**…………………………………………………...6

    *A.*    *STANDARD ON MOTION FOR RECONSIDERATION* ………………….........6

    *B.*    *THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO AUTHORITY*.....7

    *C.*    *DELTA'S HANDLING OF THE CARGO IS PART OF THE TRANSPORTATION SERVICES PROVIDED*…………………………………………………..……...10

    *D.*    *PLAINTIFF'S CLAIMS ARE PRECLUDED UNDER THE TERMS OF THE AIR WAYBILL CONTRACT*…………………………………………………..14

    *i.*    *PLAINTIFF'S CLAIM IS TIME-BARRED*…………………………………15

    *ii.*    *NO TIMELY WRITTEN COMPLAINT WAS GIVEN TO DELTA*………….…15

    *iii.*    *SHOULD PLAINTIFF'S CLAIMS SURVIVE, ANY RECOVERY WOULD BE LIMITED*……………………………………………………………16

    *E.*    *ALTERNATIVELY, PLAINTIFF HAS FAILED TO PROVIDE EVIDENCE SUPPORTING THE CLAIMS AGAINST DELTA*…………………………………19

**CONCLUSION**……………………………………………………………………...…21

**PRAYER**……………………………………………………………………………..22

**CERTIFICATE OF SERVICE**………………………………………………………..23

i

## <u>INDEX OF AUTHORITIES</u>

**Cases**

*Am. Airlines v. Mafolie Foods Co., Inc.*, No. 1998-092, 2002 WL 31573968 *3-5 (D.V.I. Jan. 15, 2002) ................................................................................................................................ 15

*Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232-33, 115 S.Ct. 817 (1995) ................................... 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 2510 (1986) .................. 9

*Baker v. Fedex Ground Package*, No. 04-3401, 2007 WL 3334387 (E.D.La. Nov. 7, 2007) ........ 7

*Barzelis v. Flagstar Bank*, No. 4:12-CV-611-Y, 2013 WL 12126117 at *1 (N.D.Tex. May 31, 2013) ................................................................................................................................... 6

*Blair v. Delta Air Lines, Inc.*, 344 F. Supp. 360 (S.D.Fla. 1972) ..................................... 14, 15, 18

*Bonn Op. Co. v. Devon Energy Prod.*, No. 4:06-CV-734-Y, 2009 WL 10677307 at *2, (N.D.Tex. April 21, 2009) ..................................................................................................................... 6

*Casas v. Am. Airlines, Inc.*, 304 F.3d 517, n.5 and 527 (5th Cir. 2002) ....................................... 14

*Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1838061 (E.D.La. May 5, 2010) ................................................................................................................................... 7

*Chirwa v. S. African Airways*, 2006 WL 8432351 (N.D.Ga. June 6, 2006) ................................ 13

*Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). ................................................ 21

*Cubero Valderama v. Delta Air Lines, Inc.*, 931 F. Supp. 119 (D. P. R. 1996) ................... 15, 18

*Ewig Intern. Marine Corp. v. Am. Airlines, Inc.*, 914 F. Supp. 1543, 1554 (N.D. Ill. 1995) ....... 16

*First PA. Bank v. E. Airlines*, 731 F.2d 1113, 1122 (3d Cir. 1984) ............................................. 12

*Greer v. Richardson Indep. School Dist.*, 752 F. Supp. 2d 759, 761 (N.D.Tex. 2010) ................. 6

*Hill Constr. Corp. v. Am. Airlines, Inc.*, 996 F.2d 1315, 1317 (1st Cir. 1993) ...................... 17, 18

*Hodges v. Delta Air Lines, Inc.*, 44 F.3d 334 (5th Cir. 1995) .............................................. 11, 12

*Jackson v. McKay-Davis Funeral Home, Inc.*, No. 07-C-1037, 2010 WL 4877912 (E.D. Wis. Nov. 23, 2010) ................................................................................................................... 15

*Jumbo Cargo, Inc. v. Lan Chile, S.A.*, 63 So. 3d 38, 40 (Fla. Dist. Ct. App.  2011) ................... 17

*Kiewut Offshore Svcs., Ltd. v. Dresser-Rand Global Svcs., Inc.*, 756 Fed. Appx. 334, 335 (5th Cir. 2018) ................................................................................................................................... 9

*Klicker v. Nw. Airlines, Inc.*, 563 F.2d 1310, 1315 (9th Cir. 1977) ............................................. 17

*Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167 (5th Cir. 1990), *overruled on other grounds* ................................................................................................................... 6

*Lawson v. Potomac Ins. Co. of IL*, No. 3:98-CV-0692-H, 1998 WL 641809 (N.D.Tex. Sept. 14, 1998) ................................................................................................................ 6

*Lee v. Delta Air Lines, Inc.*, 797 F. Supp. 1362 (N.D.Tex. 1992) .................................................. 6

*Lentini v. Delta Air Lines, Inc.*, 72 N.Y.S.3d 141 (N.Y. App. Div. 2018) ............................ 17, 18

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) ................................................................ 6

*Milhizer v. Riddle Airlines, Inc.*, 185 F. Supp. 110 (E.D. Mich. 1960) ....................................... 15

*Moses v. Air Afrique*, No. 99-CV-541, 2000 WL 306853 (E.D.N.Y. March 21, 2000) .............. 16

*Murphy v. Fed. Express Corp.*, No. 3-02-CV-1623-BD, 2003 WL 21418974 at *2 (N.D.Tex. June 12, 2003) ............................................................................................................... 21

*N. Am. Philips Cor. v. Emery Air Freight Corp.*, 432 F. Supp. 519, 525 (S.D.N.Y. 1977) ......... 15

*Neal v. Republic Airlines, Inc.*, 605 F. Supp. 1145, 1149 (N.D. Ill. 1985) ...................... 10, 13, 15

*Onyeanusi v. Pan Am*, 952 F.2d 788 (3d Cir. 1992) ............................................................... 13, 16

*Organicure Bio-Tec Co., Ltd. v. Asialink Enter. Grp. Corp.*, No. 3:09-CV-1755-N, 2012 WL 13027061 (N.D.Tex. June 7, 2012) ................................................................................. 6

*Read-Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1195 (9th Cir. 1999) ............. 14

*Reece v. Delta Air Lines, Inc.*, 686 F. Supp. 21 (D. Me. 1988) .......................................... 9, 17, 18

*Reece v. Delta Air Lines, Inc.*, 731 F. Supp. 1131 (D. Me. 1990) ...................................... 9, 10, 15

*Rundle v. Frontier-Kemper Constructors, Inc.*, 170 F. Supp. 2d 1075, 1244 (D. Colo. 2001) .... 17

*Ruston Gas Turbines, Inc. v. Pan Am. World Airways*, 757 F.2d 29 (2d Cir. 1985) ................... 17

*Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 931 (5th Cir. 1997) .............................. 12, 14

*St. Paul Ins. Co. of Ill. v. Venezuelan Int'l Airways, Inc.*, 807 F.2d 1543 (11th Cir. 1987) ......... 16

*Stud v. Trans Int'l Airlines*, 727 F, 2d (9th Cir. 1983) ................................................................. 16

*Superior Offshore Int'l Inc. v. Schaefer*, No. H-11-3130, 2013 WL 265802 (S.D.Tex. Jan. 23, 2013) ................................................................................................................................ 6

*Teal v. Eagle Fleet Inc.*, 933 F.2d 341, 347 (5th Cir. 1991) .......................................................... 7

*Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) ................................................... 7

*Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 383-84 (7th Cir. 2007) ............................. 14

*U.S. Gold Corp. v. Fed. Express Corp.*, 719 F. Supp. 1217, 1225 (S.D.N.Y. 1989) ............. 16, 17

*United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 354 (2d Cir. 1993) ....................................... 9

**Rules**

FRCP 54(b) ................................................................................................................ 6

FRCP 56(c)(1)(A) ........................................................................................................ 5

FRCP 59 ..................................................................................................................... 6

FRCP 60 ................................................................................................................. 6, 7

Tex. Civ. Prac. & Rem. Code Ann. §41.001(11) ...................................................... 21

Delta Air Lines, Inc. ("Delta"), Defendant, moves (1) for reconsideration of its motion for summary judgment based on newly discovered evidence pursuant to Rule 54, and (2) upon reconsideration, for summary judgment as to all claims pled against it in the above-numbered and styled cause; or in the alternative, declaring that Delta's liability, if any, is limited.

## I.
## STATEMENT OF ISSUES
## <u>TO BE DECIDED BY THE COURT</u>

1.      Plaintiff's newly obtained deposition testimony directly contradicts her unsupported assertion that there is an issue of fact as to whether Reese Funeral Home, Inc. ("Reese") had authority to contract with Delta on her behalf.

2.      Newly obtained deposition testimony also shows that there is no issue of fact as to whether Delta's loading of the shipment to the connecting flight was part of the "services" of transportation.

3.      As neither of the two issues of fact raised by Plaintiff remain after her deposition, Plaintiff cannot avoid the application of federal law and the terms of Delta's U.S.-Domestic Air Waybill Conditions of Contract. Plaintiff has not disputed that her claims are barred because no timely written complaint was provided to Delta, and because she failed to commence her action within one year from the date that Delta accepted the shipment for transportation.  Alternatively, Delta's liability, if any, is limited to $175.00 ($.50 per pound x 350 pounds) under Delta's U.S.-Domestic Air Waybill Conditions of Contract.

## II.
## <u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

The following undisputed facts are material to the relief requested by Delta:

4.      On December 1, 2016, Delta entered into a contract of carriage by air of a shipment said to contain the human remains of Ms. Erica Tisdale from Dallas, Texas, to Mobile,

Alabama, with Global Mortuary Affairs ("Global") in Texas as the shipper, and co-defendant Reese in Alabama, as the consignee.[1] No value was declared for carriage purposes, by either Global or Reese, and, accordingly, Delta was paid the lower freight charge.[2]

5.      On December 1, 2016, at 3:19 p.m., local time, the shipment was accepted by Delta at the airport in Dallas, Texas.  The shipment was scheduled to depart Dallas on Delta flight 084 to Atlanta, Georgia, on December 1, 2016, and to connect with Delta flight DL829 from Atlanta to Mobile, Alabama.  This flight was scheduled to leave Atlanta at 11:46 p.m., local time, and arrive in Mobile on December 2, 2016, at 12:01 a.m., local time.  The shipment was carried from Dallas to Atlanta, but, in Atlanta, it missed the connecting flight due to a short connection.  In order to avoid delay, Delta promptly made alternate arrangements to carry the shipment on the first available flight from Atlanta to the airport at Pensacola, Florida, which is approximately 70 miles from the airport at Mobile, Alabama.[3]

6.      The shipment was duly carried to Pensacola and Reese was notified of its arrival in Pensacola on December 2, 2016, at 11:59 a.m.  Approximately one hour later, on December 2, 2016, the shipment was picked up in Pensacola by Mr. Allen Rice of Reese, at which time he signed a clean delivery receipt for the cargo.[4]

7.      According to Delta's terms U.S.-Domestic Air Waybill Conditions Contract:

> 6.  Claims Time Limits and Procedures – All claims, including claims for overcharges, must be made in writing to the originating or delivering Carrier within (60) days after the date of acceptance of the shipment by the originating carrier.
>
> *              *              *
>
> Delta shall not be liable in any action brought to enforce a claim, except for overcharges, unless the above provisions have been met by the proper claimant and unless such action is

---

[1] Exhibit 2-A (App 030).
[2] Exhibit 2-A (App 030).
[3] Exhibit 2-B (App 032-034).
[4] Exhibit 2-C (App 036).

brought within one year from the date that Delta accepted the shipment for transportation.[5]

7. Liability Limits – (except DASH) – LIABILITY OF CARRIER IS LIMITED TO THE DECLARED VALUED (sic), INVOICE, OR THE AMOUNT OF ANY DAMAGES ACTUALLY SUSTAINED, WHICHEVER IS LESS. DECLARED VALUE IS AGREED AND UNDERSTOOD TO BE NOT MORE THAN .50 PER POUND OR $50.00, WHICHEVER IS HIGHER, UNLESS A HIGHER VALUE IS DECLARED HEREON AND APPLICABLE CHARGES PAID THEREON;[6]

\*            \*            \*

9. Consequential and Special Damages – THE CARRIER SHALL NOT BE LIABLE FOR ANY CONSEQUENTIAL OR SPECIAL DAMAGES WHETHER OR NOT THE CARRIER HAD KNOWLEDGE THAT SUCH DAMAGES MIGHT BE INCURRED.[7]

8.      Delta's U.S. – Domestic Shipping Rules, also provide as follows:

**G32 Limit of Liability**

A.   By tendering the shipment to carrier for transportation, the shipper, for itself and all parties having an interest in the shipment, agrees to the limitations set forth in these rules and regulations… .[8]

9.      On June 26, 2019, Delta filed its motion for summary judgment, arguing that Ms. Tisdale's claims fail as a matter of law because she failed to provide timely written notice of claim as required, or, in the alternative, because she failed to commence this action within one year of Delta's receipt of the shipment for carriage.  Alternatively, Delta sought to limit its liability, if any, as required by the terms of the Air Waybill at issue.

10.      Ms. Tisdale did not deny her failure to comply with the requirements of the

---

[5] Exhibit 2-D, p. 1, ¶ 6 (App 038).
[6] Exhibit 2-D, p. 1, ¶ 7 (App 038).
[7] Exhibit 2-D, p. 1, ¶ 9 (App 039).
[8] Exhibit 3 (App 056).

Section 6 Claims Time Limits and Procedures provisions.  Instead, she opposed the motion by arguing that the terms of the Air Waybill contract do not apply to her because Delta has "not alleged nor provided any evidence of any party to the Waybill having authority to act on Plaintiff's behalf." Ms. Tisdale asserted, albeit incorrectly, that Reese is not a party to the Air Waybill, and thus, that there is an issue of fact as to whether parties to the Air Waybill had authority to act on Ms. Tisdale's behalf.  In addition, Ms. Tisdale argued that there was an issue of fact as to whether Delta's failure to load cargo related to Delta's "services" of transportation.

11.     The December 4, 2019, Order of the Court denied Delta's motion, finding that "genuine disputes as to material facts exist for the fact finder to determine." [9]

12.     On September 12, 2019, after the motion had been fully briefed, Ms. Tisdale was deposed.  She testified that she asked her brother to contact Reese to make all the funeral arrangements on her behalf.[10]  She also testified that it was her wish that her daughter be brought to, and buried in, Mobile -- and not in Dallas where she passed away -- because she is from Mobile, the majority of her family still resides there and her father is buried there.[11]  She further testified that she left it up to Reese to arrange for the transportation from Dallas to Mobile, and that Reese notified her that her daughter's remains were expected to arrive to Mobile on December 2, 2016 at 12:01 a.m.[12]  She did not have any requests or objections to Reese contracting with Delta for the transportation.[13]  She was advised about the transportation arrangements and she approved and agreed to the invoice for services, which included Delta's transportation charges.[14]

---

[9] *Doc. 52.*
[10] Ex. 1 at 13:6-24 (App 005).
[11] Ex. 1 at 14:3-12 (App 005).
[12] Ex. 1 at 24:3-10 (App 007), 51:3-10 (App 014), 58:2-5 (App 016).
[13] Ex. 1 at 58:6-14 (App 016).
[14] Ex. 1 at 26:6-27:19 (App 008), 29:3-20 (App 009); Ex 1-C (App 24).

13.     Ms. Tisdale testified that she drove from Dallas to Mobile on November 30, 2016, for her daughter's funeral scheduled for December 3, 2016.[15]  Ms. Tisdale and her family had a private viewing on the evening of December 2, 2016.  Even though Ms. Tisdale did not make any formal arrangements or pay for a private viewing, Reese accommodated Ms. Tisdale and permitted it.   Ms. Tisdale and her family left when they deemed appropriate, as no one interrupted their private viewing or asked them to leave.[16]  Nevertheless, Ms. Tisdale did not ask Reese to continue their private viewing on the morning of the funeral.[17]  She testified that the funeral was held as scheduled on December 3, 2016, at 11:00 a.m.[18]

## III.
## EVIDENCE IN SUPPORT OF THE MOTION

14.     Pursuant to Federal Rules of Civil Procedure 56(c)(1)(A), this motion is supported by the following evidence:

a.     Exhibit 1:  Deposition transcript of Michelle Tisdale

b.     Exhibit 1-A:  Deposition exhibit 1

c.     Exhibit 1-B:  Deposition exhibit 2

d.     Exhibit 1-C:  Deposition exhibit 3

e.     Exhibit 2:  Affidavit of Sharon L. Fischer

f.     Exhibit 2-A:  Air waybill number 006-6739-5322, marked as Ex. 1-A to the Affidavit of Sharon L. Fischer

g.     Exhibit 2-B:  Shipment history, marked as Ex. 1-B to the Affidavit of Sharon L. Fischer

h.     Exhibit 2-C:  delivery receipt, marked as Ex. 1-C to the Affidavit of Sharon L. Fischer

---

[15] Ex. 1 at 16:19-17:3 (App 005-006), 19:17-25 (App 006).
[16] Ex. 1 at 23:19-24:2 (App 007), 29:3-30:17 (App 009), and 32:13-33:6 (App 009-010).
[17] Ex. 1 at 56:25-57:4 (App 015-016).
[18] Ex. 1 at 21:22-22:5 (App. 007)

i.      Exhibit 2-D:  Delta's U.S. – Domestic Air Waybill Conditions of Contract, marked as Ex. 1-D to the Affidavit of Sharon L. Fischer

j.      Exhibit 3:  Reply Affidavit of Shari L. Fischer

k.      Exhibit 3-A:  Delta Cargo U.S. Domestic Shipping Rules, marked as Ex. 2 to the Reply Affidavit of Shari L. Fischer.

l.      Exhibit 4:   Michelle Tisdale's Original Petition in *Michelle Tisdale v. Delta Air Lines, Inc., et al.,* Cause No. CV-18-06063-A.

m.      Exhibit 5:  Plaintiff's First Amended Original Complaint

## IV.
## ARGUMENT AND AUTHORITIES

*A.      STANDARD ON MOTION FOR RECONSIDERATION*

15.     Interlocutory orders are subject to reconsideration under FRCP 54(b).   While motions for reconsideration of interlocutory orders are not subject to the strict limitations imposed by Rules 59 and 60, considerations similar to those underlying the analysis under Rules 59 and 60 apply to cases involving interlocutory orders.[19]   Courts have considered motions for reconsideration of orders denying motions for summary judgment.[20]

16.     The Fifth Circuit has recognized the validity of requests for reconsideration of orders or judgments, even though they are not formally recognized under the rules of procedure, and has found them appropriately entertained by the trial courts pursuant to Rule 59 or Rule 60 of the Federal Rules of Civil Procedure.[21]   While providing an extraordinary remedy, reconsideration, under Rule 59, serves a narrow but important purpose of "allowing a party to

---

[19] *See Barzelis v. Flagstar Bank*, No. 4:12-CV-611-Y, 2013 WL 12126117 at *1 (N.D.Tex. May 31, 2013); *Organicure Bio-Tec Co., Ltd. v. Asialink Enter. Grp. Corp.,* No. 3:09-CV-1755-N, 2012 WL 13027061 (N.D.Tex. June 7, 2012); *Bonn Op. Co. v. Devon Energy Prod.*, No. 4:06-CV-734-Y, 2009 WL 10677307 at *2, (N.D.Tex. April 21, 2009).

[20] *See*, *e.g.*, *Superior Offshore Int'l Inc. v. Schaefer*, No. H-11-3130, 2013 WL 265802 (S.D.Tex. Jan. 23, 2013); *Lawson v. Potomac Ins. Co. of IL*, No. 3:98-CV-0692-H, 1998 WL 641809 (N.D.Tex. Sept. 14, 1998); *Lee v. Delta Air Lines, Inc.*, 797 F. Supp. 1362 (N.D.Tex. 1992).

[21] *Greer v. Richardson Indep. School Dist.*, 752 F. Supp. 2d 759, 761 (N.D.Tex. 2010), *citing Lavespere v. Niagara Mach. & Tool Works, Inc*., 910 F.2d 167 (5th Cir. 1990), *overruled on other grounds, Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994).

correct manifest errors of law or fact or to present newly discovered evidence."[22]  Under Rule 60, relief can be sought to introduce newly discovered evidence or for any other reason justifying relief from the operation of the judgment.[23]

17.     While considered an extraordinary remedy that should not be used to rehash evidence or raise new arguments that could have been raised in the original motion, reconsideration is warranted to consider new evidence or to correct errors of law.[24]

18.     In this case, the deposition testimony of Ms. Tisdale contradicts her assertions of factual questions raised in opposition to Delta's motion for summary judgment -- the issue of whether Reese had authority to contract with Delta, and the issue whether Delta's loading of the shipment onto a connecting flight was a part of its service of transportation – and demonstrates that there is no factual support raising a genuine issue of material fact.  Ms. Tisdale's testimony could not have been submitted on the prior motion which was fully briefed by August 14, 2019, because Ms. Tisdale was deposed on September 12, 2019.  Thus, Ms. Tisdale's testimony was not available at the time of the underlying motion for summary judgment and as such, constitutes newly discovered evidence.

### B.     *THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO AUTHORITY*

19.     Based on Ms. Tisdale's deposition testimony, it is clear that there is no genuine issue of fact as to whether Reese had authority to arrange for the transportation of Ms. Tisdale's daughter's human remains on behalf of Ms. Tisdale, such as to raise an issue of fact as to whether the conditions of carriage in Delta's Air Waybill apply to her.

---

[22] *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1838061 (E.D.La. May 5, 2010), *quoting Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).
[23] *See, e.g., Teal v. Eagle Fleet Inc.*, 933 F.2d 341, 347 (5th Cir. 1991).
[24] *Baker v. Fedex Ground Package*, No. 04-3401, 2007 WL 3334387 (E.D.La. Nov. 7, 2007), *citing Templet* at 478.

20.     In opposition to Delta's motion, Ms. Tisdale asserted that there was no evidence that Reese had authority to act on her behalf in contracting with Delta and therefore, Ms. Tisdale is not bound by the terms and conditions of Delta's Air Waybill contract.

21.     Contrary to this assertion, in her deposition, Ms. Tisdale testified that she, through her brother, retained Reese to make arrangements, including the transportation arrangements, so that she could have her daughter's remains transported from Dallas to Mobile, so that she could be buried in Mobile.[25]   She testified that she left it up to Reese to arrange for transportation from Dallas to Mobile.[26]   She had no objections to Reese's contracting with Delta for transportation.[27]   In fact, she was aware of the transportation arrangements, and she agreed to Delta's carriage charges.[28]   Clearly, Reese had authority to act on Ms. Tisdale's behalf as her agent in arranging for transportation services.   Moreover, Reese, which fulfilled the requirement of making transportation arrangements on Ms. Tisdale's behalf, is a party to the Air Waybill as it is named as the consignee entitled to the delivery of the shipment, as is clear from the face of the Air Waybill.[29]   As the consignee, Reese took the delivery of the shipment under the Air Waybill.[30]   In addition, Ms. Tisdale, through Reese as its agent, was billed by Delta for the service of transportation of Ms. Tisdale's daughter's remains.   Thus, Ms. Tisdale's testimony makes it clear that there is no issue of fact as to whether Reese had authority to contract for transportation services with Delta.   Reese had authority to do so, and therefore, Ms. Tisdale is bound by the terms of Delta's Air Waybill contract and conditions of carriage.

22.     In order to avoid summary judgment by raising a triable issue of fact, a

---

[25] Ex. 1 at 13:6-24 (App 005), 14:3-12 (App 005).
[26] Ex. 1 at 24:3-10 (App 007), 51:3-10 (App 014), 58:2-5 (App 016).
[27] Ex. 1 at 58:6-14 (App 016).
[28] Ex. 1 at 26:6-27:19 (App 008), 29:3-20 (App 009).
[29] Ex. 2-A (App 030).
[30] Ex. 2-C (App 036).

nonmoving party must come forward with evidence such that a reasonable jury could return a verdict for the nonmoving party.[31]  Mere conclusory allegations and feigned issues are not sufficient to defeat a motion.[32]

23.     Here, Ms. Tisdale's own testimony contradicts her conclusory allegation that there is an issue of fact as to whether Reese had authority to act on her behalf.  Thus, Ms. Tisdale's conclusory allegation – now contradicted by her own testimony - is not sufficient to defeat Delta's motion.

24.     In *Reece v. Delta Air Lines, Inc.,*[33] relied on by Ms. Tisdale in opposition to the motion, plaintiffs, a widow and two sisters of a decedent, sought to recover for emotional distress suffered as a result of a mishandling of the remains in air carriage.  Defendant moved for a summary judgment limiting liability under the terms of the air waybill contract.  The court denied the motion on the ground that the contractual limitation of liability did not apply because there was nothing on the record to indicate that the funeral home had authority to act on behalf of plaintiffs in executing the air waybill contract.[34]

25.     Subsequently, on a renewed motion for summary judgment after discovery, the defendant asserted that the funeral home acted as the widow's agent and reiterated the remaining arguments.[35]  The Magistrate Judge recommended that summary judgment be granted only as to the claims asserted by the widow because "no party had suggested that [the funeral home] …

---

[31] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 2510 (1986).

[32] *Id.*; *see also Kiewut Offshore Svcs., Ltd. v. Dresser-Rand Global Svcs., Inc.*, 756 Fed. Appx. 334, 335 (5th Cir. 2018) (a genuine factual dispute must be supported by citing to specific evidence on the record; a mere metaphysical doubt or unsupported assertion of a factual question is not sufficient to defeat a motion for summary judgment); *United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 354 (2d Cir. 1993) ("Summary judgment is called for where 'it clearly appears that the issues are not genuine, but feigned.'") (internal citation omitted).

[33] *Reece v. Delta Air Lines, Inc.*, 686 F. Supp. 21 (D. Me. 1988).

[34] *Id.* at 22.

[35] *Reece v. Delta Air Lines, Inc.*, 731 F. Supp. 1131 (D. Me. 1990).

was an agent for" the remaining plaintiffs.[36]

26.    The District Court agreed that the widow was bound by the terms of the air waybill contract arranged for by the funeral home on her behalf.  The court went further, holding that the contractual limitations applied to all plaintiffs, regardless of whether there was a showing of an agency relationship or not, reasoning that the air waybill terms applied to all parties with an interest in the shipment, and not only to the widow as the principal of the shipper or consignee.[37]

27.    Thus, based on newly discovered evidence, it is clear that Reese acted on Ms. Tisdale's behalf in arranging for the transportation of her daughter's remains with Delta under the Air Waybill contract, and that it had authority to do so.  Thus, there is no issue of fact as to whether the terms of the Air Waybill contract apply to Ms. Tisdale.  As Ms. Tisdale did not contest that her claims are barred under federal law and the terms of the air waybill contract at issue to the extent that Reese, as a party to the contract, had authority to make transportation arrangements, Delta's motion for summary judgment should be granted.

### C.    *DELTA'S HANDLING OF THE CARGO IS PART OF THE TRANSPORTATION SERVICES PROVIDED*

28.    In the alternative, Ms. Tisdale argued that there is an issue of fact as to whether Delta's failure to load the shipment on the connecting flight arises from Delta's performance of the "service" of transportation.  As with Ms. Tisdale's prior argument, this one also rests on an unsupported conclusory assertion.

29.    First, as Ms. Tisdale herself testified, she signed and agreed to the invoice which included charges for services provided to her, including Delta's charges for its services of transportation of her daughter's remains from Dallas to Pensacola, where the shipment was

---

[36] *Id.* at 1134.
[37] *Id.* at 1135 and n.5, *citing Neal v. Republic Airlines, Inc.*, 605 F. Supp. 1145, 1149 (N.D. Ill. 1985).

delivered to Reese.[38]  The transportation services included Delta's carriage of the shipment from Dallas via Atlanta to its final destination, as it is clear from the face of the Air Waybill contract at issue.[39]  It is indisputable that it was necessary to offload the shipment in Atlanta, move the remains, and to load it onto the connecting flight.  Thus, the offloading and loading of the shipment is a necessary and indispensable part of Delta's service of carriage from Dallas to Mobile, or Pensacola, via Atlanta, under the Air Waybill.

30.    Ms. Tisdale's reliance on *Hodges*[40] is wholly misplaced.  As the court in that case said, "'[s]ervices" generally represent a bargained-for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. …These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as 'services' and broadly to protect from state regulation."   .[41]  They include, for example items such as ticketing, boarding, provision of food and drink, and baggage and cargo handling, in addition to the transportation itself.[42]

31.    In *Hodges*, plaintiff sought to recover for personal injuries sustained when she was hit by a case of rum that fell out when a fellow passenger opened an overhead bin.  The *Hodges* court held that the claim for personal injuries was not preempted because "[w]hether certain luggage may be placed in overhead bins and whether the flight attendants properly monitor compliance with overhead rack regulations are matters that pertain to the safe operation

---

[38] Ex. 1 at 26:6-27:19 (App 008), 29:3-20 (App 009).

[39] Ex. 2-B (App 032-0034).

[40] *Hodges v. Delta Air Lines, Inc.*, 44 F.3d 334 (5th Cir. 1995).

[41] *Hodges* at 335.

[42] *See Id.*

of a flight."[43]  The court contrasted that case from those involving bumping a passenger from an overbooked flight or removing a loud and intoxicated passenger from the flight, which the court found to relate to boarding practices performed by the airline itself, which are necessary to and inextricable from the airline's services of carrying passengers.[44]

32.     This case is also distinguishable from *Hodges*.  Unlike *Hodges,* which involved a claim by a passenger[45] based on an airline's monitoring of compliance by passengers themselves, this case involved cargo handling practices performed by the airline itself, which is necessary and inextricable from its service of carrying cargo.  Here, Ms. Tisdale testified that she drove from Dallas to Mobile on November 30, 2016 for her daughter's funeral.[46]  She testified that she expected that her daughter's remains would arrive in Mobile, Alabama, on December 2, 2016. The only logical conclusion is that she had no expectation that she would handle any part of the carriage from Dallas to Mobile, or that she would handle, or even be present for, the loading of her daughter's remains to the connecting flight in Atlanta.  In fact, she paid for Delta's carriage of her daughter's remains from Dallas to Pensacola, via Atlanta.  Clearly, Delta's loading of the shipment to the connecting flight – and conversely its failure to do so – is part and parcel of its service of transportation which it was retained to perform.

33.     Courts have repeatedly found that the limitations and terms of the contract of carriage govern claims for delay involving failure to load a shipment to fly as scheduled, regardless of whether such claims are couched in contract or in tort, both in the context of

---

[43] *Id.* at 338-39.
[44] *Id.* at 339-40.
[45] As the Fifth Circuit in *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 931 (5th Cir. 1997) explained, *Hodges*'s narrow holding was limited to certain claims by passengers, and did not apply to cargo claims.  *Id.* at 929, *quoting First PA. Bank v. E. Airlines*, 731 F.2d 1113, 1122 (3d Cir. 1984).  In that case, plaintiff-shipper sought to recover the value of cargo consisting of three packages containing jewelry that were lost in transit, alleging negligence, breach of contract and violations of the Texas deceptive trade practices law.  The district court granted defendant's motion for summary judgment holding that, under federal law, the air waybill limitation of liability applied and that the claim under the Texas deceptive trade practices law was preempted.  *Id.* at 929-31.
[46] Ex. 1 at 16:19-17:3 (App 005).

interstate and international transportation.  For example, in *Neal*[47], the carrier failed to load a shipment of human remains to fly from Chicago to Columbus, Mississippi, as scheduled. Instead, the shipment flew from Chicago to Memphis to Atlanta to Greenville and back to Memphis, and arrived to Columbus with a 24 hour delay.  The terms and conditions of the air waybill contracts and tariffs, including the limitation of liability, governed.  In *Onyeanusi v. Pan Am*,[48] plaintiff sought compensatory and punitive damages arising from failure to load and carry a shipment of human remains from New York to Nigeria via Paris as scheduled, resulting in an eight day delay.  The court found that the claims are subject to the requirement of a timely written complaint for claims arising out of damage, loss or delay in carriage of cargo.  In *Chirwa v. S. African Airways*,[49] plaintiff sought to recover for damage arising from a two (2) day delay in transporting human remains from Atlanta, to Lusaka, Zambia, arising from defendant's failure to timely load the shipment onto a connecting flight in Johannesburg, South Africa.  The court held that the action is barred by plaintiff's failure to comply with the requirement to provide a timely written complaint because plaintiff's state law claims, though sounding in breach of contract, negligence and emotional distress, were preempted by the Warsaw Convention, which governed carriage by air between countries signatories to the Convention.

34.    Therefore, it is clear that Ms. Tisdale's assertion that Delta's loading of the shipment of her daughter's human remains onto an aircraft -- and conversely Delta's failure to do so – was part of Delta's transportation services which was contracted for, and expected, by Ms. Tisdale.  Thus, Ms. Tisdale has failed to raise an issue of fact as to whether Delta's failure to load the shipment during a relatively short connection time in Atlanta to fly as scheduled is related to Delta's service of carriage, and her claims are governed by federal common law and

---

[47] *Neal, supra*, 605 F.Supp. 1145.
[48] *Onyeanusi v. Pan Am*, 952 F.2d 788 (3d Cir. 1992).
[49] *Chirwa v. S. African Airways*, 2006 WL 8432351 (N.D.Ga. June 6, 2006).

the terms of the Air Waybill contract.

      D.      *PLAINTIFF'S CLAIMS ARE PRECLUDED UNDER THE TERMS OF THE AIR WAYBILL CONTRACT*

35.      It is well established that federal common law governs a carrier's liability for the loss of or damage to goods occurring during interstate shipment.[50] The United States Supreme Court has held that the ADA preempts all state law claims that are asserted against "air carriers" that have "a connection with or reference to airline 'rates, routes, or services,' leaving only federal common law claims based on the contract of carriage."[51]

36.      Accordingly, federal courts have repeatedly held that claims by bereaved family members arising from alleged delay, loss or damage in carriage by air of human remains shipments are governed by federal common law, under which the terms of the contract of carriage govern. For example, in *Blair v. Delta Air Lines, Inc.*,[52] plaintiff sought to recover for damages to the remains of his deceased wife, alleging ordinary and gross negligence in shipping and transportation and seeking punitive damages. The court rejected plaintiff's argument that Delta's limitation of liability provision – like the one at issue in this case – was not enforceable, and noted the well-established rule that valid tariffs "conclusively and exclusively govern the

---

[50] *See Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 383-84 (7th Cir. 2007) ("We therefore join our colleagues in holding that a claim for lost or damaged goods transported by a common air carrier arises under federal common law and thus falls within the district court's federal question jurisdiction"); *see also, Casas v. Am. Airlines, Inc.*, 304 F.3d 517, n.5 and 527 (5th Cir. 2002) (holding that plaintiff's state law claims are preempted); *Hodges*, *supra* at 336 (5th Cir. 1995); *Read-Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1195 (9th Cir. 1999) ("federal common law applies to loss of or damage to goods by interstate common carriers by air").

[51] *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232-33, 115 S.Ct. 817 (1995) (the ADA preempts a claim under the Illinois Consumer Fraud Act); *Read-Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1195 (9th Cir. 1999) ("federal common law applies to loss of or damage to goods by interstate common carriers by air"); *Sam L. Majors Jewelers*, *supra* at 931 (5th Cir. 1997) (the ADA preempts a claim under the Texas Deceptive Trade Practice-Consumer Protection Act).

[52] *Blair v. Delta Air Lines, Inc.*, 344 F. Supp. 360 (S.D.Fla. 1972).

rights and liabilities between the parties."[53]   The court concluded that federal law governed and that the tariffed limitation of liability applied to plaintiff's claims.[54] [55]

### i.    PLAINTIFF'S CLAIM IS TIME-BARRED

37.    Ms. Tisdale's claim is time-barred as she failed to commence this action within one year from the acceptance of the shipment for carriage by Delta as required by the standard terms of Delta's domestic contract for carriage.  Here, Delta accepted the shipment for carriage on December 1, 2016, and carried it on December 1 and 2, 2016.  *Plaintiff's Original Petition and Request for Written Discovery* was filed with the Dallas County Clerk on November 6, 2018, which is 23 months after the completion of the carriage by Delta.[56]  Thus, Ms. Tisdale's suit was eleven months too late and is, therefore, time-barred.[57]

### ii.    NO TIMELY WRITTEN COMPLAINT WAS GIVEN TO DELTA

38.    In addition to being time-barred, Ms. Tisdale's claims are precluded because Delta was not provided with a timely written notice of a claim as required by Delta's U.S. – Domestic Air Waybill Conditions of Contract, which requires all claims to be made in writing

---

[53] *Id.* at 365.

[54] *Id.* at 365, 367.  As "[t]he established rule is that the tariffs, if valid, constitute the contract of carriage between the parties," the reasoning in *Blair*, though concerning tariffs, applies with equal force to all cases involving terms and conditions of a contract of carriage.

[55] *Jackson v. McKay-Davis Funeral Home, Inc.*, No. 07-C-1037, 2010 WL 4877912 (E.D. Wis. Nov. 23, 2010) (claims for breach of fiduciary duty, negligent handling of human remains, and negligent infliction of emotional distress were dismissed; a breach of contract claim was governed by federal law); *Cubero Valderama v. Delta Air Lines, Inc.*, 931 F. Supp. 119 (D. P. R. 1996) (a claim for mental distress arising from a loss of the shipment of cremated human remains in air carriage was preempted by federal law); *Reece*, *supra* 731 F. Supp. 1131*; Neal supra* 605 F. Supp. 1145 (N.D. Ill. 1985) (federal common law applies to claims relating to a 24 hour delay in delivering a shipment of human remains); *Milhizer v. Riddle Airlines, Inc.*, 185 F. Supp. 110 (E.D. Mich. 1960) (carrier's contractual limitation of liability for all damages precluded plaintiff's claim for mental pain and suffering based on allegations of negligent operation and maintenance of the plane causing a crash in which the remains of her deceased husband carried on board were mutilated).

[56] Ex. 4 (App 067-076).

[57] *See, Am. Airlines v. Mafolie Foods Co., Inc*., No. 1998-092, 2002 WL 31573968 *3-5 (D.V.I. Jan. 15, 2002) (plaintiff's claims were time-barred by air waybill suit limitation clause); *N. Am. Philips Cor. v. Emery Air Freight Corp.*, 432 F. Supp. 519, 525 (S.D.N.Y. 1977) (Plaintiff's suit was time-barred by the limitation of time within which suit must be commenced contained in defendant's tariff rules).

within sixty (60) days.[58]  Mr. Reese accepted the shipment at issue on December 2, 2016.  Sixty (60) days from December 2, 2016 is January 31, 2017.  As no timely written notice of claim was received by Delta as required by Delta's U.S. – Domestic Air Waybill Conditions of Contract, Ms. Tisdale is precluded from asserting a claim against Delta.[59]

39.     The mere fact that Delta was aware of a ten hour delay in carriage of the shipment is not sufficient.  A carrier's actual knowledge of the loss based on sources other than a written complaint is not sufficient to satisfy the notice requirement.[60]

### iii.    SHOULD PLAINTIFF'S CLAIMS SURVIVE, ANY RECOVERY WOULD BE LIMITED

40.     To the extent that Ms. Tisdale's claims survive, any recovery from Delta would be limited to $175.00, under the terms of Delta's contract of carriage.

41.     Generally, under federal common law, a limitation of liability provision contained in a contract of carriage is enforceable and it applies to claims sounding in tort as well as in contract.[61]  To be enforceable, "[1] the limitation of liability was the result of a fair, open, just and reasonable agreement between carrier and shipper, entered into by the shipper for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount or

---

[58] Ex. 2-D, ¶6 (App 038).

[59] *See St. Paul Ins. Co. of Ill. v. Venezuelan Int'l Airways, Inc.*, 807 F.2d 1543 (11th Cir. 1987) (analyzing a conflict between the notice provision in the air waybill, convention and tariffs, and finding that the claim was barred because of untimely notice).

[60] *See Onyeanusi*, 952 F.2d at 795; *see also, Moses v. Air Afrique*, No. 99-CV-541, 2000 WL 306853 (E.D.N.Y. March 21, 2000) ("the fact that airline personnel witnessed the destruction of baggage does not obviate the requirement that the passenger make a formal written complaint to the airlines"); *Stud v. Trans Int'l Airlines*, 727 F. 2d (9th Cir. 1983) ("If written notice of a consignee's complaint is necessary to preserve the right of recovery, a carrier's actual knowledge of the loss, gleaned from a source other than a written notice of complaint, is necessarily insufficient"); *see also, Ewig Intern. Marine Corp. v. Am. Airlines, Inc.*, 914 F. Supp. 1543, 1554 (N.D. Ill. 1995) (written communications from consignee to a carrier providing "notice of potential harm, or notice given before the damage or destruction has actually been ascertained, is not sufficient to satisfy" the notice requirement).

[61] *U.S. Gold Corp. v. Fed. Express Corp.*, 719 F. Supp. 1217, 1225 (S.D.N.Y. 1989).

risk . . . and [2] the shipper was given the option of higher recovery upon paying a higher rate."[62]
The inquiry is whether the carrier gave adequate notice of the limitation of liability to the
shipper, and whether the notice given is reasonable is a question of law to be determined by the
court.[63]

42.     Under the "released value" doctrine, a carrier may limit its liability to the agreed
value of the goods, provided that the shipper has the option of obtaining coverage for the full
value of its goods, is made aware of that option, and knowingly chooses to pay a lower price for
lesser coverage.[64]  It is not necessary that an employee of the carrier explain the option to declare
a higher value to the shipper, but rather, the carrier is only required to provide reasonable notice
of this option.[65]

43.     For example, in *Hill Constr.*, American Airlines appealed from a judgment
requiring it to pay approximately $22,000 to the plaintiff as a result of American Airlines having
temporarily lost and then damaged a helicopter blade that was to be shipped from San Juan,
Puerto Rico, to California.[66]   American Airlines was not contesting the fact of liability, but
rather, it argued that the lower court lacked the power to award damages greater than the
maximum limitation amount allowed pursuant to the contract provision in the air waybill

---

[62] *Id.* at 1224 (internal citations and quotation omitted); *see Rundle v. Frontier-Kemper Constructors, Inc.,* 170 F. Supp. 2d 1075, 1244 (D. Colo. 2001); *Jumbo Cargo, Inc. v. Lan Chile, S.A.*, 63 So. 3d 38, 40 (Fla. Dist. Ct. App. 2011).

[63] *See U.S. Gold*; *see also Ruston Gas Turbines, Inc. v. Pan Am. World Airways*, 757 F.2d 29 (2d Cir. 1985).

[64] *Hill Constr. Corp. v. Am. Airlines, Inc.*, 996 F.2d 1315, 1317 (1st Cir. 1993); *Klicker v. Nw. Airlines, Inc.*, 563 F.2d 1310, 1315 (9th Cir. 1977) (explaining that "[t]he released valuation limitations bind the passenger-shipper to the restriction on liability, however, only if he has notice of the rate structure and is given the opportunity to pay the higher rate in order to obtain greater protection"); *Lentini v. Delta Air Lines, Inc.*, 72 N.Y.S.3d 141 (N.Y. App. Div. 2018) ("The fact that the language setting forth the limited liability provision is found on the reverse side of the air waybill does not render the provision unable to satisfy the released-valuation doctrine").

[65] *Hill Constr.*, 996 F.2d at 1317.  A party is unable to avoid the liability limitations in an air waybill by recasting the form of action in terms of tort claims such as negligence where the claims arise from a breach of the air waybill. *See*, e.g.*, Reece, supra*.

[66] *Id.* 996 F.2d at 1316.

17

limiting its liability to $9.07 per pound, for a total amount of $1,814.00.[67]  Specifically, the reverse side of the air waybill contained a series of clauses setting forth transport conditions that limited the carrier's liability for cargo that is lost, damaged, or delayed to $9.07 per pound, and that the shipper may avoid the limitation by declaring a higher value in exchange for paying a greater fee.[68]  The front side of the air waybill referred the reader to the reverse side as follows:

> This nonnegotiable airbill is a contract governed by Law and by the provisions on the reverse side.  Such provisions, among other things, exclude or limit the Carrier's liability for loss, damage or delay in certain circumstances.[69]

The front side of the air waybill also contained a box captioned "declared value," which was left blank by the employee who signed the air waybill on behalf of *Hill Constr.*[70]

44.    Applying these principles, courts have repeatedly enforced the limitation of liability provision in Delta's air waybills.[71]

45.    The Air Waybill in this case clearly gave the shipper notice of the limitation of liability provision in the body of its form air waybill and afforded it an opportunity to declare value.  It is undisputed that the shipper provided information reflected in the Air Waybill, and by executing it, confirmed that no value was declared and agreed to the terms and conditions as stated therein.  The shipper could have declared a higher value, thereby increasing the amount of

---

[67] *Id.*
[68] *Id.* at 1318.
[69] *Id.*
[70] *Id.*
[71] *See, e.g.*, *Valderama, supra* (plaintiffs' recovery on their claims sounding in gross negligence was limited to $50.00 per shipment as no declaration of value was made by the shipper); *Reece, supra* ("The express limitation contained in the air waybill effectively limited Defendant's liability to fifty cents per pound for all Plaintiffs' claims"); *Blair, supra*; *Lentini, supra* (plaintiff's recovery was limited to $50.00 under the limitation of liability provision of the air waybill at issue; plaintiff could not avoid the contractual limitation of liability by relying on state common law of tort, conversion or bailment, as such claims are preempted by the ADA).

Delta's potential liability, but chose not to do so.  Instead, it chose not to declare value for carriage purposes and, consequently, to pay a lower freight charge.[72]

46.     Therefore, in the alternative, Delta's liability in this case, if any, must be limited to $175.00.[73]

### E.     ALTERNATIVELY, PLAINTIFF HAS FAILED TO PROVIDE EVIDENCE SUPPORTING THE CLAIMS AGAINST DELTA

47.      Alternatively, even if Ms. Tisdale's claims are not governed by the terms of the Air Waybill, her claims still fail as she has failed to provide any evidence which could sustain her claims against Delta.

48.     Ms. Tisdale alleges that Delta was negligent because it "caused the misplacement of the body of Plaintiff's daughter."[74]  She also alleges that she was damaged because she was not able to have a private viewing which was scheduled for December 2, 2016 at 1:00 pm, and missed out on a private viewing due to a public viewing scheduled for December 3, 2016 between 9:00-11:00 a.m.[75]  She further contends that she was "completely distraught during the approximately twenty (20) hours her daughter's body was missing."[76]

49.     Contrary to Ms. Tisdale's unsupported allegations, her daughter's remains never went missing.  She testified that she received a call from Reese on 8:00 a.m. of December 2, 2016, during which she was advised that her daughter's remains missed the connecting flight and that they were working to make alternate arrangements to try to get her body to Mobile.[77]  After missing the relatively short connection time in Atlanta, to avoid further delay, Delta made alternate arrangements so that the body of Ms. Tisdale's daughter would be transported to

---

[72] Ex. 3. at p. 10 (App 056).
[73] Plaintiff's recovery is limited to $.50 per pound.  Because the weight of the shipment at issue was 350 pounds, Delta's liability is limited to $175.00.
[74] Ex. 5 at ¶ 27 (App 082).
[75] Ex. 5 at ¶ 22 (App 081).
[76] Ex. 5 at ¶ 21 (App 081).
[77] Ex. 1 at 26:2-27:1 (App 008).

Mobile expeditiously, and sent it on the first available flight to Pensacola, where it arrived the same day around noon, and where it was picked up by Mr. Rice, approximately an hour later. The next time Ms. Tisdale spoke with Reese, she was advised of these arrangements.[78]  At no point in her deposition did she indicate that she believed the remains had been lost or were unaccounted for.  Clearly, her assertion that her daughter's body went missing is unsupported and directly contradicted by the new evidence in the form of her deposition testimony that she was advised as to the location of her daughter's body and the steps taken to transport it to Mobile.

50.     Moreover, Ms. Tisdale's contract with Reese reflects no charges for the use of Reese's facilities for viewing or visitation, and did not require or allow a specific amount of private visitation time.[79]  Even so, Ms. Tisdale was accommodated and allowed to spend as much time as she wanted with her daughter's body on the evening of December 2, 2016.[80]  In addition, Ms. Tisdale never requested or discussed a desire to have any additional time with her daughter's body, either later that night or on the morning of the funeral.[81]

51.     Ms. Tisdale testified that her damages stem from the fact that her viewing time was short because she did not get to see her daughter until 9:00 p.m. on December 2, 2016. Delta, however, delivered the shipment of human remains to Reese around 1:00 p.m.[82]  Any delay arising from Ms. Tisdale's waiting until 7:00 p.m. to go to the funeral home only to learn that the dress that Reese was provided with was not fitting, which delayed her viewing[83], cannot be attributed to Delta.

---

[78] Ex. 1 at 27:2-19 (App 008).
[79] Ex. 1-C (App 024).
[80] Ex. 1 at 32:11-33-2(App 009-010), 54:2-25(App 015), 56:17-57:4 (App 015-016).
[81] Ex. 1 at 33:3-6 (App 010).
[82] Ex. 2-C (App 036).
[83] Ex. 1 at 28:7-18 (App 008).

52.     While Delta concedes that, due to the short connection time, it failed to load the shipment onto the connecting flight, Ms. Tisdale failed to provide any evidence supporting her allegations for negligence.  Moreover, Ms. Tisdale failed to provide any evidence supporting her assertion of gross negligence, as she has failed to provide any evidence that Delta's omission involved an extreme degree of probability of risk and magnitude of harm and that Delta was aware of the risk involved but proceeded to act with indifference to the rights or welfare of Ms. Tisdale.[84]   Likewise, there is no evidence to support the assertion of intentional or willful conduct on part of Delta.[85]   Moreover, the claim for intentional infliction of emotional distress is duplicative of her negligence claims.[86]   In fact, evidence shows that, when the shipment missed the connecting flight, Delta did all it could to get the shipment to its destination promptly and made alternate arrangements that resulted in the shipment arriving to the nearby airport on time for Reese to receive the shipment and dress the body so that Ms. Tisdale and her family was able to have private time with her daughter, and ensuring that there was no delay or interference with the scheduled funeral arrangements.

## CONCLUSION

Based on newly discovered evidence, it is clear that there is no genuine issue of material fact warranting the denial of Delta's motion for summary judgment applying the terms of the Air Waybill contract at issue.  Both of the issues of fact raised by Plaintiff in opposition to Delta's motion for summary judgment are contradicted by her newly discovered deposition testimony.

Based on the terms of Delta's Air Waybill contract and conditions of carriage, Plaintiff's claim is barred as it was not commenced within a year, or, alternatively, because she has failed to

---

[84] *See* Tex. Civ. Prac. & Rem. Code Ann. §41.001(11).
[85] *See Murphy v. Fed. Express Corp.*, No. 3-02-CV-1623-BD, 2003 WL 21418974 at *2 (N.D.Tex. June 12, 2003).
[86] *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005).

21

provide a timely written complaint as required.  To the extent that her claims are not barred, her recovery, under the terms of the Air Waybill contract is limited.

In the alternative, even if the terms of the Air Waybill contract did not apply, Ms. Tisdale has failed to provide any evidence that could support her allegations against Delta, and her claims for negligence, gross negligence and intentional infliction of emotional distress must be dismissed.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Delta respectfully requests that the Court grant its motion for reconsideration, and, upon reconsideration, grant Delta's motion for summary judgment and enter a summary judgment in Delta's favor dismissing all claims as against it, or in the alternative, declaring that any recovery would be limited to $175.00, and grant such other and further relief as the Court deems necessary and proper.

Dated: December 16, 2019.

Respectfully submitted,

**VAUGHAN & RAMSEY**

 _/s/ Daena G. Ramsey_
Daena G. Ramsey
Texas Bar No. 08093970
dramsey@vrlaw.net
2000 East Lamar Blvd., Suite 430
Arlington, Texas  76006
(972) 262-0800 - *telephone*
(888) 711-6044 - *Toll Free*
(972) 642-0073 – *facsimile*

**MOUND COTTON WOLLAN & GREENGRASS LLP**

Francis A. Montbach
Olga Sekulic
One New York Plaza
New York, NY  10004
212-804-4229

22

212-344-8066 – Fax
fmontbach@moundcotton.com
osekulic@moundcotton.com

**COUNSEL FOR DELTA AIR LINES, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on December 13, 2019.  Any other counsel of record will be served by first class mail on the same date.


 _/s/ Daena G. Ramsey_____